THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TARA KOJSZA                     :
                                :
        Plaintiff                :
                                :
    v.                          :   3:12-CV-1602
                                :   (JUDGE MARIANI)
SCOTTSDALE INSURANCE CO.        :
                                :
        Defendant                :

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendant's Motion for Summary Judgment (Doc. 14) on Plaintiff's claims for breach of contract (Count I) and breach of the duty of good faith and fair dealing (Count II). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

### II. Undisputed Statement of Facts

Defendant, Scottsdale Insurance Company ("Scottsdale"), issued a policy of insurance to Plaintiff, Tara Kojsza, with effective dates of February 22, 2009 to February 22, 2010. (Policy, Doc. 17, Ex. A). The Policy provided up to $120,000 in coverage for personal property losses. (*Id.*).

On July 6, 2009, Plaintiff left her residence for a trip to Philadelphia. (Am. Comp., Doc. 5, ¶ 4; Police Report, Doc. 17, Ex. C, at 4). Plaintiff returned to her residence on July 9, 2009, at which time she discovered that a theft had occurred. (Doc. 17, Kojsza Dep., Ex.

F at 14:14-15:19, Police Report at 4, Am. Comp. at ¶ 5). That day, Plaintiff contacted the Scranton Police Department, which reported to the property and conducted an investigation. (Police Report at 4-5; Kojsza Dep. at 25:6-28:9).

Officer Bonin completed the report and classified the break-in as "0523 burglary-no-force-residence-unk". (Police Report at 1). Patrolman Bonin has confirmed that this classification means "this was a burglary, that there was no sign of forced entry, that it was a home, a residence, and that the time it occurred is unknown." (Bonin Dep., Doc. 17, Ex. D, at 9:2-5). This was confirmed by Detective Spinosi, the detective on Plaintiff's case, who testified that a different abbreviation or code would have been used in the report had there been any evidence that force had been used to enter the property. (Spinosi Dep., Doc. 17, Ex. E at 14:14-15:10).

Soon thereafter, Plaintiff filed a claim with Defendant asserting loss of personal property amounting to approximately $30,000. (Semcheski Report, Doc. 17-3, Ex. B at 2). As part of Scottsdale's investigation into Plaintiff's claim, it retained Eugene Semcheski of Cunningham Lindsay to investigate the claim. (Semcheski Dep., Doc. 17, Ex. G, at 10:2-4). As part of that investigation, Mr. Semcheski interviewed Plaintiff, reviewed the police report, conducted an inspection of the property, and took photographs of the property. (Id. at 13:23-18:21). Based on his inspection, Mr. Semcheski found that there were no visible signs of forced entry into the property. Specifically, he said "[i]t was a fairly new window and there

were no pry marks on it. The frame was not bent as if someone tried to force it open. The lock was not broken, glass was not broken." (*Id.* at 19:17-24).

The policy of insurance issued to Plaintiff by Scottsdale provides in pertinent part:

**Item 9.** Theft of **COVERAGE C – Personal Property of SECTION I PERILS INSURED AGAINST** is deleted and replaced by the following:

9. Theft, including attempted theft and loss of property provided theft is a result of burglary and visible signs of forced entry are evidence. Mysterious disappearance will not be considered as theft. This peril does not include loss caused by theft:

(Amendatory Endorsement to Policy, Doc. 17-2, Ex. B, at 13).

Defendant denied Plaintiff's claim by letter dated August 21, 2009 and cited Mr. Semcheski's conclusion that there were no "visible signs of forced entry" into the residence as required by the policy as the basis for its denial. (Denial Letter, Doc. 17, Ex. H).

### III. Disputed Facts

Despite the above undisputed facts, there are three key facts in dispute.

First, there is a dispute as to whether there were any "visible signs" on or near the kitchen window. Patrolman Bonin testified that when he arrived at Plaintiff's home, he "couldn't observe any break-in, there was no forced entry, no sign that force was used to get into the home." (Bonin Dep. at 9:23-25). He also "vividly remember[ed] that there was no sign of forced entry detected at that home" by way of "a pry mark or a broken frame, a window frame, a door frame to force their way in." (*Id.* at 10:3-11).

3

Still, he "believe[d] there was a burglary that occurred," (*id.* at 12:10-13) and he described the residence as having been "ransacked when [he] got in." (*Id.* at 6:20-21). Mr. Semcheski also stated he did not inspect the window lock. (Semcheski Dep. at 19:17-24, 20:2-4). Finally, Plaintiff argues that a photograph of her kitchen window shows marks along the bottom edge of the window and a deep gouge mark on the frame. (Pl.'s Counter-Statement of Facts at ¶ 33).

Second, there is a dispute as to whether Plaintiff left her kitchen window open before she left for Philadelphia on July 6, 2009, unlocked, or neither. She testified at her deposition that she did not leave it open or unlocked. (Kojsza Dep. at 31:1-21). However, Mr. Semcheski testified that Plaintiff told him "that the double-hung kitchen window was not completely shut and locked" when she left. (Semcheski Dep. at 21:11-13).[1]

Third, there is a dispute as to whether Plaintiff's yard gate was unlocked or broken when she returned from Philadelphia. Plaintiff claims that the lock on her gate was broken when she returned from Philadelphia. (Kojsza Dep. at 21:25) ("I don't know how it was open – opened, but you can tell there was force on it because the lock is actually – like, a portion of the plastic fell out . . . ."). However, Mr. Semcheski testified that she told him it was "unlocked because of the phone call she received from her neighbor . . . that her dog had gotten out and apparently . . . ran up the street and bit his dog." (*Id.* at 22:1-5). Mr.

---

[1] In her Amended Complaint, Plaintiff averred that the kitchen window was unlocked when she left for Philadelphia. (Am. Compl. at ¶ 22). In her deposition, however, she testified that "I always secure my home before leaving. . . . I always lock my windows, my windows are even locked in the summertime." (Kojsza Dep. at 57:9-16). This inconsistency is a matter that Plaintiff will have to explain at trial, and the jury will determine her credibility.

4

Semcheski did not inspect the fence or the gate's lock, purportedly because he had not been informed of any damage to the gate or the lock. (*Id.* at 23:22-25).[2]

## IV. Motion for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's,

---

[2] Here again, Plaintiff's Amended Complaint indicates the burglar(s) "unlocked the gate to" her fenced-in yard. (Am. Compl. at ¶ 22).

5

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## V. Analysis

### Count I: Breach of Contract

To establish a breach of contract claim in Pennsylvania, one must prove: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

> [W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.

*Lesko v. Frankford Hosp.–Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011) (internal citations omitted). If the language of an insurance policy is unclear, "[i]n construing ambiguous language in an insurance contract, we generally construe the language against the insurance company as the drafter of the contract." *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 541 (Pa. 2006).

The insurance policy at issue says as follows:

**Item 9. Theft of COVERAGE C – Personal Property of SECTION I PERILS INSURED AGAINST** is deleted and replaced by the following:

6

> 9. Theft, including attempted theft and loss of property provided theft is a result of burglary and visible signs of forced entry are evidence. Mysterious disappearance will not be considered as theft.

(Amendatory Endorsement to Policy, Doc. 17-2, Ex. B, at 13).

In construing paragraph 9 above, the Court finds there is no ambiguity as to what is meant by "visible signs of forced entry." Pennsylvania case law interpreting similar language in insurance contracts relating to burglary policies is sparse, but *Weldcraft Equipment Co. v. Crum & Forster Insurance Co.* controls this case. 312 A.2d 68 (Pa. Super. Ct. 1973). In *Weldcraft*, the insured submitted a claim to its carrier when a theft occurred at its business overnight. At trial, a witness for the insured testified that he had locked all the doors the previous night, and the next morning, he found "a door 'ajar' with 'scratches' on the tongue and 'little nicks' on the door; and that '(t)o the best of (his) knowledge the nicks were not there when he had left the evening before.'" *Id.* at 69. The insurer presented evidence that "in the owner's opinion entry was gained by picking the lock and, after having checked carefully, there was no damage to the door." *Id.* at 70.

> The policy define[d] "burglary" as
>
> (t)he felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to the exterior of the premises at the place of such entry . . . .

*Id.* at 69. The trial court judge found that the lock and been picked and the premises burglarized, but he concluded that "little marks" fell "short of 'actual force and violence'"

7

which precluded coverage under the policy. On appeal, the Superior Court stated, "[i]t is not apparent, however, whether the court found that marks were made incident to the picking." *Id.* at 70. "If there were no marks, appellant as owner is not entitled to recover, but if there were, it is." *Id.* at 71. The Superior Court went on to explain:

> The purpose of a burglary provision such as the one at issue is to enable the carrier to offer a less comprehensive policy to the insured at a correspondingly lower cost. In limiting coverage to forcible entry physical evidence of which is required, the carrier protects itself 'from what commonly are known as 'inside jobs' and from the frauds that would inevitably result if some physical evidence of break-in were not required.' *Kretschmer's Home of Appliances v. United States Fidelity & Guaranty Co.*, 410 S.W.2d 617, 618-619 (Ky. 1966). *See Schoenfeld v. Royal Indemnity Co.*, 76 Pa. Super. 295 ([Pa. Super. Ct.] 1921).
>
> If the lock is picked, the first condition of the policy, that 'entry (be) . . . by actual force and violence,' is met. In a literal sense, 'force' must be applied to move the lock no matter what means is employed. Even if the key designed to fit the lock is used, there has been an application of 'force'. By coupling 'force' with 'violence' the policy implies that the application of force must be illegitimate in nature. The policy does not, however, prescribe that any particular degree of force must be used. Consequently there is no warrant for the conclusion by the court below that "(l)ittle marks' . . . would fall short of 'actual force and violence' . . . .' If the carrier had wished to prescribe a degree of force, it could have; since it did not, no prescription favorable to the carrier will be implied, for the policy must be read against the carrier. *MacDonald v. Metropolitan Life Ins. Co.*, 304 Pa. 213, 155 A. 491 (1931); *Lucas v. John Hancock Mutual Life Ins. Co.*, 116 Pa.Super. 298, 176 A. 514 (1935); *Lentin v. Continental Assurance Co.*, 412 Ill. 158, 105 N.E.2d 735 (1952).
>
> The second condition of the policy is that as a result of the forcible entry 'there are visible marks made by tools, explosions, electricity or chemicals upon, or physical damage to the exterior of the premises at the place of . . . entry . . . .' As is the case with respect to the degree of force required, there is no prescription with respect to the extent of the marks required, and none will be found implied. Whether the marks are 'little', or 'scratches', or 'little nicks',

8

> is immaterial; the only prescription is that they be 'visible' and have resulted from the forcible entry.

*Id.* Ultimately, the Superior Court remanded the case to the trial court for the sole purpose of determining whether the visible marks resulted from the lock having been picked. *Id.*

Despite the undisputed statements of fact above, Plaintiff argues that "there were marks along the bottom portion of Ms. Kojsza's kitchen window, including a very noticeable gouge mark." (Pl.'s Counter-Statement of Facts at ¶ 33). She relies on black-and-white photographs attached to Mr. Semcheski's investigation report which, according to him, show "[n]o physical damage to window" taken from both inside and outside the Plaintiff's residence. (Doc. 18-9, Ex. I, Pictures No. 3 and 4).

The well-settled requirement of Rule 56 that a court refrain from resolving disputed issues of fact precludes this Court from determining whether or not there are "marks along the bottom portion" of the kitchen window and whether there is a "very noticeable gouge mark." Even if there were, the Court does not have evidence before it of whether the marks existed before Plaintiff's home was burglarized or whether they are a result of the application of force to gain entry to her home. Therefore, the Court must deny summary judgment to Defendant at this time because the facts are unclear as to whether the gouge marks even exist, and if so, whether they resulted from the unlawful entry through the Plaintiff's kitchen window. *Weldcraft*, 312 A.2d at 71.

Tied to this dispute, there exists another dispute as to whether the kitchen window was unlocked, partially open, or neither before Plaintiff left for Philadelphia. If the window

was partially open, then there is less likelihood that any "visible sign" was the result of forced entry. These are factual discrepancies that must be resolved at trial.

Finally, the dispute as to whether the gate was unlocked or whether the lock was broken may or may not be relevant to the resolution of Plaintiff's breach of contract claim. The Policy describes coverage for loss of personal property "provided theft is a result of burglary and visible signs of forced entry are evidence. Mysterious disappearance will not be considered as theft." (Amendatory Endorsement to Policy, Doc. 17-2, Ex. B, at 13). The Policy then excludes coverage for theft "[f]rom that part of a 'residence premises' rented by an 'insured' to other than an 'insured,'" and "theft that occurs off the 'residence premises'" to property that is not at issue here. (*Id.*). The Policy defines "residence premises" as "[t]he one family dwelling where you reside; . . . and which is shown as the 'residence premises' in the Declarations. 'Residence premises' also includes *other structures and grounds at that location*." (Policy, Doc. 17-1 at 13, Definitions ¶ 11) (emphasis added).

The parties have not briefed the issue of whether the gate would be considered part of the "residence premises," so the Court will not resolve the issue at this time.

### Count II: Breach of the Duty of Good Faith and Fair Dealing

Though there is a dispute of fact as to whether Defendant breach its contract (i.e. the insurance policy) with Plaintiff, the Court finds there is no dispute as to whether Defendant breached its duty of good faith and fair dealing to Plaintiff.

Pennsylvania's bad faith statute provides the following:

10

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371. "[T]he bad faith insurance statute is concerned with the duty of good faith and fair dealing." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007) (internal citations omitted).

Though the statute does not define "bad faith," Pennsylvania's Superior Court has explained that "bad faith" includes "any frivolous or unfounded refusal to pay proceeds of a policy." *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1171 (Pa. Super. Ct. 2012) (internal citations and quotation marks omitted). To that end, "the insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* "[I]t is not necessary that the refusal to pay be fraudulent. However, mere negligence or bad judgment is not bad faith." *Id.* "The insured must also show that the insurer breached a known duty (i.e., the duty of good faith and fair dealing) through a motive of self-interest or ill will." *Id.*

Conversely, "an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d

11

Cir. 2012) (internal citations and quotation marks omitted). "Even questionable conduct giving the appearance of bad faith is not sufficient to establish it so long as the insurer had a reasonable basis to deny coverage." *Id.* at 523. Bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Id.* (citing *Terletsky* [*v. Prudential Prop. & Cas. Ins. Co.*], 649 A.2d 680, 688) (Pa. Super. Ct. 1997).

> This heightened standard requires evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith. Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial.

*Id.* (internal citations and quotation marks omitted).

Faced with such an exacting standard, Plaintiff cannot defeat Defendant's motion for summary judgment on Count II. The language of the Policy requires "visible signs of forced entry" for coverage to apply. Because (1) the police report concluded there were no obvious signs of a break-in, (2) the officer on the scene, Patrolman Bonin independently recalled and confirmed the contents of his report at his deposition, and (3) Mr. Semcheski's investigation also concluded there were no obvious signs of a break-in, the Court cannot find such "clear, direct, weighty and convincing" evidence to establish by clear and convincing evidence that Defendant acted in bad faith in denying coverage.

Though Plaintiff argues that Defendant did not provide Mr. Semcheski with sufficient discretion or guidelines to conduct a more thorough investigation (Pl.'s Brief in Opposition, Doc. 20, at 9), the undisputed evidence shows that he did conduct an investigation in which

he was looking for signs of physical damage, such as a broken window, bent frames, and the like. As such, the Court finds that Defendant had a reasonable basis for denying coverage when it relied on both Mr. Semsheski's and the police report. Accordingly, the Court will grant summary judgment in favor of Defendant on Count II.

## VI. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment (Doc. 14). The Court will deny summary judgment to Defendant on Count I for breach of contract and will grant summary judgment on Count II for breach of the duty of good faith and fair dealing. A separate Order follows.

Robert D. Mariani
United States District Judge